IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SANDRA S. AND DIEGO M.,** individually and on behalf of D.M.S. | : : : | **CIVIL ACTION** |
| v. | : : | No. 25-2389 |
| **UPPER DARBY SCHOOL DISTRICT** | : : | |

**McHUGH, J.**                                                                                                       **December 31, 2025**

## AMENDED MEMORANDUM[1]

The Individuals with Disabilities Act (IDEA) and Section 504 of the Rehabilitation Act work in tandem to provide students with disabilities with the right to a free appropriate public education and to receive accommodations in education. Under the statutory and regulatory schemes of both acts, parents are entitled to receive certain educational records and undergo an administrative complaint process, but there are subtle differences in their structures. The issue presented by this case is whether one or both statutes give parents a stand-alone private right of action when a school fails to provide educational records. For the reasons that follow, I conclude that the IDEA creates a private cause of action for violations arising out of the denial of access to educational records, but that Section 504 does not.

**I.**     **Facts as Pled**

D.M.S. is a 12-year-old child in sixth grade at the Marple Education Center within Upper Darby School District. Compl. ¶¶ 26, 27, ECF 1. D.M.S. has autism and an IQ score below the first percentile, and as such is classified as "disabled" under the IDEA and Section 504. *Id.* ¶¶ 11, 12, 29.

---

[1] This memorandum modifies and supersedes my previous opinion issued September 24, 2025, ECF 8.

D.M.S.'s parents, Sandra S. and Diego M. ("Parents"), were concerned about their child's education at Marple, and in November 2024 they requested his educational records from the District through their attorney. *Id.* ¶ 30. The District produced some—but not all—of the documents that Parents requested. *Id.* ¶ 31. In January 2025, Parents filed a due process complaint against the District, asserting that the District had failed to perform an adequate evaluation of D.M.S. and failed to provide them with all of his educational records, in violation of the IDEA and Section 504. *Id.* ¶ 32. The complaint included a detailed list of over twenty specific records that the District failed to provide. Admin. Compl. at ¶ 23, ECF 7-1.

After receiving the complaint, the District agreed to fund an independent educational evaluation, mooting a portion of the complaint. Compl. ¶ 32 n.1. The District then moved to dismiss the remaining claim about educational records, asserting that no independent cause of action existed for the denial of records. *Id.* ¶ 33. The Hearing Officer agreed, dismissing the case in March 2025, with a cursory order. *Id.* ¶ 34. Parents assert that the District still has not produced all relevant records. *Id.* ¶ 35.

Parents now bring suit in federal court challenging the Hearing Officer's decision to dismiss the complaint.[2] The District has moved to dismiss the case, again asserting that no independent private right of action exists for failure to produce educational records. *See* Mot. to Dismiss, ECF 6.

---

[2] Parents filed this action on May 11, 2025 – less than 90 days after the decision of the Hearing Officer.

**II.     Standard of Review**

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).[3]

**III.    Discussion**

   **A.  The IDEA**

The Individuals with Disabilities Education Act (IDEA) was passed by Congress to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).  The IDEA requires educational agencies in states to comply with numerous requirements to receive federal funding, and its main requirement is that states make available a free appropriate public education ("FAPE") to children with disabilities.  *Id.* § 1412(a)(1).

Beyond this substantive requirement, "[t]he IDEA sets up a host of procedures for ensuring not only that every child who qualifies under the IDEA receives a FAPE but that the child's parents play a significant role in the development of their child's education."  *Montgomery Cnty. Intermediate Unit No. 23 v. A.F. ex rel. D.F.*, 506 F. Supp. 3d 293, 303 (E.D. Pa. 2020) (McHugh,

---

[3] When considering an appeal from a state administrative decision under the IDEA, "[f]actual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (internal quotations omitted).  Because the administrative Hearing Officer made no factual determinations, this appeal sounds purely in law and de novo review is appropriate.  *See* Hearing Officer Order, ECF 1-1.

J.). For example, "[s]tates must comply with detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing" Individualized Education Programs ("IEP"). *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271-72 (3d Cir. 2014). In addition, states "must also implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process. These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing." *Id.* at 272.

These "procedural safeguards cannot be gainsaid." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205 (1982). That is so because, as the Supreme Court observed, "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, *see, e.g.*, §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard." *Id.* at 205-06.

As a part of this procedural scheme, the IDEA gives the "parents of a child with a disability" the right "to examine *all records* relating to such child . . . with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1) (emphasis added); *see also* 34 C.F.R. § 300.501(a) (stating that the IDEA gives parents and their representatives "an opportunity to inspect and review all education records with respect to (1) the identification, evaluation, and educational placement of the child; and (2) the provision of FAPE to the child."). This is hardly surprising because it would seem self-evident that access to records about their child's education is necessary for parents to be able to participate in the administrative process and evaluate whether a school is complying with the IDEA. The District acknowledges the language of the statute and the regulations, but contends that the IDEA does not "provide parents with the

4

right to file a due process complaint solely on the basis that a local education agency allegedly failed to produce all educational records." Mot. to Dismiss at 6, ECF 6.

I disagree. "The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations. The parent or guardian of a minor student who is denied the rights *and procedures* set forth in the IDEA is afforded the opportunity to file an administrative complaint and to appeal an adverse determination to a federal district court." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (emphasis added) (citing §§ 1415(b)(6), (i)(2)). Specifically, the IDEA allows parents to file an administrative due process complaint "with respect to *any matter* relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A) (emphasis added). And the term "any matter" necessarily encompasses the mandatory provision of records, so long as those records relate to the identification, evaluation, placement, or FAPE of a child.

Further, pursuant to the procedures laid out by Congress, a hearing officer reviewing a complaint is permitted to find that a child did not receive a FAPE solely based on a procedural violation so long as the procedural violation "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). The statute therefore permits hearing officers and courts to review stand-alone allegations of procedural violations, but any ruling on a procedural violation must satisfy one of these requirements. *See also D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010) ("A procedural violation is actionable under the IDEA only if it results in a loss of educational

opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.") (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007)).

Numerous courts have reviewed IDEA procedural violation claims to determine whether they meet this Congressionally set standard. *See, e.g.*, *P.C. ex rel. J.C. v. Harding Twp. Bd. of Educ.*, No. 11-6443, 2013 WL 3938969, at *9 n.1 (D.N.J. July 31, 2013) (acknowledging that a lack of details in an IEP could be a procedural violation of the IDEA, but ultimately finding that circumstances did not significantly deprive parents of their participation rights); *Zakary M. ex rel. Donna M. v. Chester Cnty. Intermediate Unit*, No. 95-1842, 1995 WL 739708, at *3-4 (E.D. Pa. Dec. 6, 1995) (finding that inadequate written notice constituted a procedural violation of the IDEA); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 274 (3d Cir. 2012) (evaluating IEP content as it relates to IDEA procedural requirements, but finding the procedural violation did not affect substantive rights); *Montgomery Cnty. Intermediate Unit No. 23*, 506 F. Supp. 3d at 306-09 (McHugh, J.) (finding that an IDEA procedural violation significantly impeded parents' opportunity to participate in the decision making process). Likewise, numerous hearing officers in Pennsylvania have refused to dismiss complaints with stand-alone records denial claims. *See* Pl.'s Resp. at Ex. B, ECF 7-2 (collecting six hearing officer decisions); *see also Medici v. Pocono Mountain Sch. Dist.*, 2010 WL 1006917 at *5-6 (M.D. Pa. Mar. 16, 2010) (denying a motion to dismiss on a records IDEA claim). Even the Third Circuit has suggested that records violations can establish a colorable IDEA claim. *See W.B. v. Matula*, 67 F.3d 484, 501 n.13 (3d Cir. 1995), *abrogated on other grounds by*, *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007) (noting that the complaint "state[s] colorable claims of violation of clearly established law. *See* . . . 20

U.S.C. § 1415(b)(1)(A) and 34 C.F.R. § 300.562 (parents may review all records relevant to evaluation and classification of child)").

Here, Plaintiffs filed an administrative complaint asserting both substantive and procedural violations of the IDEA. The substantive charges were ultimately mooted. But instead of reviewing the alleged procedural violations and determining (1) if the District violated the IDEA, and (2) if the procedural violations met the criteria outlined in 20 U.S.C. § 1415(f)(3)(E)(ii), the Hearing Officer improperly dismissed the case in an email, citing no legal authority for his conclusion that no cause of action existed. *See* Hearing Officer Order, ECF 1-1. This appeal followed.

Turning to the Complaint, I conclude that Parents have stated a claim that could entitle them to relief under 20 U.S.C. § 1415(f)(3)(E)(ii). Parents assert that D.M.S. experiences significant impairments and is considered "disabled" under both the IDEA and Section 504. Compl. ¶¶ 11, 12, 29. Parents also submit that the District has failed to provide them with all of D.M.S.'s records. *Id.* ¶ 35. Plaintiffs have therefore sufficiently pleaded a procedural violation of the IDEA. And, drawing all inferences in Plaintiff Parents' favor, I find that they have plausibly pleaded that the denial of records "impeded the parents' opportunity to participate in the decision making process" of providing a FAPE to D.M.S., because it is difficult to conceive how parents can fully participate in that process without a full understanding of how the school has approached their child's education. Importantly, Parents here are asserting a procedural violation alone, rather than a deprivation of FAPE, for which they seek injunctive relief only, not compensatory education. *See C.H. v. Cape Henlopen Sch. Dist.,* 606 F.3d 59, 66 (3d Cir. 2010). Consequently, they do not further need to prove a deprivation of educational benefits to prevail, because a

7

procedural violation impairing participation in the educational process constitutes a claim in its own right.[4]

The District also turns to Pennsylvania law to argue that no independent cause of action exists for procedural violations.  The IDEA embraces principals of "cooperative federalism," whereby federal law sets out minimum standards states must achieve to receive federal assistance, but does not create a nationally uniform approach to the education of children with disabilities. *See Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 785 (1st Cir. 1984), *aff'd sub nom. Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 105 (1985).  "Thus, the IDEA does not preempt state law if the state standards meet the minimum federal guidelines." *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, No. 10-5698, 2011 WL 1253994, at *5 (D.N.J. Mar. 29, 2011*), aff'd*, 542 F. App'x 139 (3d Cir. 2013).

But the IDEA preempts state laws that directly conflict with it.  *See, e.g.*, *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 142 (3d Cir. 2013)[5]; *E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011), *aff'd sub nom.*, *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012); *Doe ex rel. Gonzales v. Maher*, 793 F.2d 1470, 1485-86 (9th Cir. 1986) (finding that a provision of the precursor to IDEA preempted a state law).  State laws are invalid if they "'interfere with, or are contrary to, federal law.'" *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008) (quoting *Hillsborough Cnty. v. Automated*

---

[4] My earlier memorandum failed to recognize that Parents are not claiming a denial of FAPE in this action, but only a procedural violation,

[5] *R.B.* is non-precedential opinion.  *See* Third Circuit Internal Operating Procedure 5.7 ("Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.").  While I generally believe that there is little to be gained from trying to parse nonprecedential Third Circuit decisions, I find the reasoning of this case to be persuasive in applying other circuit precedent on preemption to the IDEA.

*Med. Labs.*, 471 U.S. 707, 712 (1985)). Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (internal quotation marks omitted). *See also M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.,* 302 F. Supp. 3d 626, 629 (D. Del. 2018) (McHugh, J.) (finding federal question jurisdiction where application of state law would conflict with IDEA).

Pursuant to Pennsylvania law, "[i]f parents disagree with the school district's . . . identification, evaluation, or placement of, or the provision of a free appropriate public education to the student or young child, the parent may request an impartial due process hearing." 22 Pa. Code § 14.162(b). On its face, Pennsylvania law appears to be less expansive than the IDEA, which permits parents to file a complaint about "*any matter* relating to the identification, evaluation, or educational placement of the child, or the provision of a" FAPE. 20 U.S.C. 1415(b)(6)(A) (emphasis added). To the extent that Pennsylvania law could be interpreted to foreclose relief available under the IDEA—in this case, a records-based complaint—the Pennsylvania statute would conflict with the IDEA and be preempted. I therefore decline to rely on Pennsylvania law to dismiss the case.

### B. Section 504

Plaintiffs also bring suit pursuant to Section 504 of the Rehabilitation Act, "the first broad federal statute aimed at eradicating discrimination against individuals with disabilities." *Helen L. v. DiDario*, 46 F.3d 325, 330 (3d Cir. 1995). In its relevant part, Section 504 mandates:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Although Section 504 has a broader applicability than the IDEA, it operates in concert with it. As the Third Circuit has explained, "§ 504's 'negative prohibition' is similar to the IDEA's 'affirmative duty' and . . . requires schools that receive federal financial assistance to 'provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction.'" *M.R.*, 680 F.3d at 280 (quoting *W.B.*, 67 F.3d at 494-93 and 34 C.F.R. § 104.33(a)). Accordingly, schools must "reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits." *Id.*

As with the IDEA, regulations promulgated under Section 504 provide parents with the right to access their child's educational records. 34 C.F.R. § 104.36 (requiring operators of public schools to implement procedural safeguards, including "an opportunity for the parents or guardian of the person to examine relevant records"); *see also* 22 Pa. Code § 15.9(3) (requiring local educational agencies under Section 504 to "[p]rovide access to educational records of the student to the parents or a representative of the parents."). And parents are entitled to an impartial administrative hearing "with respect to actions regarding the identification, evaluation, or educational placement of persons" who may need special educational support due to a disability. 34 C.F.R. § 104.36. If a records request relates to the "identification, evaluation, or educational placement," a parent thus has a right to administratively challenge the denial of educational records.

But the dispositive question here is whether a private cause of action exists in a federal court, not whether there is a right to file an administrative complaint. Courts have interpreted Section 504 to provide a broad private right of action. "Section 504's private right of action derives . . . from the right of action that exists to enforce Title VI." *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 426 (3d Cir. 2004); *see also A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Congress clearly incorporated, through adoption of Title VI's remedial scheme, a private, judicial remedy for violations of [Section 504]."). Consequently, "the remedies for violations of . . . § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002); *see also* 29 U.S.C. § 794a(a)(2) ("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.").

Despite that, not all regulations promulgated under Section 504 create an associated private cause of action. Only regulations that "construe and define a personal right that Section 504 creates"—put differently, regulations that "flesh out" statutory personal rights—are privately enforceable. *Three Rivers*, 382 F.3d at 426, 429. In contrast, regulations that focus on the "entity regulated rather than . . . the individual protected," emphasize "'institutional policy and practice, not individual instances' of discrimination," and have an "aggregate focus" are not privately enforceable. *Id.* at 419, 429-30 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 288 (2002)).

Here, the regulation at issue is directed towards a regulated entity— "a recipient that operates a public elementary or secondary education program" —rather than protected individuals. 34 C.F.R. § 104.36. It requires such institutions to "establish and implement . . . a system of

11

procedural safeguards," thus focusing on the creation of institutional procedures rather than the personal rights of individuals.  *Id*.  And though one mandated procedural safeguard is "an opportunity for the parents or guardian of the person to examine relevant records," the regulation is focused on the broader processes that funding recipients must establish.  In sum, 34 C.F.R. § 104.36 does not construe and define a personal right created by Section 504, with the result that no federal private cause of action exists for violations of this regulation.  Defendants' Motion to Dismiss must be granted with respect to this claim.

### IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss has been granted in part and denied in part.  At the Rule 16 case management conference the parties agreed that a remand to the hearing officer is appropriate at this stage.

　　　　　　　　　　　　　　　　　　　　　 /s/ Gerald Austin McHugh　
　　　　　　　　　　　　　　　　　　　　　United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SANDRA S. AND DIEGO M., individually and on behalf of D.M.S.** : | |
| : | **CIVIL ACTION** |
| v.  : | **No. 25-2389** |
| : | |
| **UPPER DARBY SCHOOL DISTRICT** : | |

**ORDER**

This 24th day of September, 2025, for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF 6, is **GRANTED in part** and **DENIED in part**. Plaintiffs' claim under Section 504 of the Rehabilitation Act is **DISMISSED.**

                                                     /s/ Gerald Austin McHugh
                                                    United States District Judge